Alan L. DEMOS, Marion Merriweather, Michael A. Domino, Ronald Graham, and Debbe Boswell, Plaintiffs,

v.

CITY OF INDIANAPOLIS; Bart Peterson, Mayor of the City of Indianapolis, Defendants.

No. IP 99–022–C–B/S.

United States District Court, S.D. Indiana, Indianapolis Division.

Dec. 29, 2000.

Timothy E. Peterson, Bamberger & Feibleman, Indianapolis, IN, for Plaintiffs.

Peggy D. Dallmann, Office of the Corporation Counsel, Indianapolis, IN, for Defendants.

### ENTRY DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BARKER, Chief Judge.

Five employees and former employees of the City of Indianapolis ("the City") sued the City and Bart Peterson, Mayor of the City of Indianapolis, for overtime compensation pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, *et seq.* Defendants filed a Motion for Summary Judgment and supporting documents arguing that Plaintiffs were exempt

administrative and/or executive employees as defined by 29 U.S.C. § 213(a)(1). Extensive briefing followed. For the reasons set fort below, Defendants are entitled to summary judgment on the FLSA claims of Plaintiffs Domino and Boswell, but are not entitled to summary judgment as to Merriweather. Also, Defendants have failed to establish that there is no genuine issue of material fact as to the salary test for Plaintiffs Graham and Demos, but have met that burden with regard to the duties test for these two plaintiffs.

### Standard for Summary Judgment

■ The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted if the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The moving party may meet its burden of demonstrating the absence of a triable issue by establishing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 325, 106 S.Ct. 2548, 2552, 2554, 91 L.Ed.2d 265 (1986). The party opposing a well-supported summary judgment motion may not simply rest on the pleadings, but must respond affirmatively with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). In deciding a motion for summary judgment, courts construe all facts and draw all reasonable and justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Shank v. William R. Hague, Inc.,* 192 F.3d 675, 681 (7th Cir.

1999). This presumption is especially true in FLSA cases as the employer, often the moving party, has the burden of establishing whether an employee fits within an exemption to the overtime pay requirements of the statute. *Piscione v. Ernst & Young, L.L.P.,* 171 F.3d 527, 533 (7th Cir. 1999) (citing *Corning Glass Works v. Brennan,* 417 U.S. 188, 196–97, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974)). Nonetheless, the "mere scintilla of evidence in support of the plaintiff's position will be insufficient" to avoid summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

### Analysis

■ The Fair Labor Standards Act mandates that an employee who works more than forty hours in a workweek be paid, for the overtime hours worked, not less than one and one-half times the rate at which the employee is normally paid. 29 U.S.C. § 207(a)(1). State and municipal employers must comply with this requirement, just as private employers are obligated by it. *DiGiore v. Ryan,* 172 F.3d 454, 460 (7th Cir.1999) (citing *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985)). The City does not dispute that Ronald Graham, Marion Merriweather, and Alan Demos [1] were often required to work more than forty hours in a week. Defendants' Statement of Material Facts in Support of Motion for Summary Judgment ("Defs.' Facts"), ¶ 9. The City further admits that Plaintiffs did not receive overtime pay at the rate set forth by the FLSA. *Id.,* ¶ 8.

---

1. The claims of Plaintiffs Debbe Boswell and Michael Domino are barred by the statute of limitations. The FLSA has a three-year statute of limitations for willful violations, 29 U.S.C. § 255, and a cause of action accrues at each regular payday immediately following the work period during which the services, for which compensation is sought, were rendered. *Angulo v. The Levy Co.,* 568 F.Supp. 1209, 1215 (N.D.Ill.1983), *aff'd sub nom. Flores v. Levy Co.,* 757 F.2d 806 (7th Cir.

1985). The complaint in this case was filed January 11, 1999, and Defendants, for the purposes of this motion, assume *arguendo* that the three-year statute of limitations applies. Hence, all claims prior to January 11, 1996 are barred. Both Boswell and Domino stopped working in positions classified as exempt in 1995. For this reason, Defendants are entitled to summary judgment as to the claims of Plaintiffs Boswell and Domino.

Defendants argue that, despite these facts, they are not required to pay Graham, Merriweather and Demos overtime because the FLSA overtime provisions do not apply to "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). Specifically, Defendants contend that Graham and Merriweather both qualified for exempt status under the administrative or executive exemptions to the FLSA. Defendants' Memorandum in Support of Motion for Summary Judgment ("Defs.' Memo.") at 13, 15. Also, according to the City, Demos performed duties consistent with the administrative exemption and is therefore exempt from the overtime provisions of the FLSA. *Id.* at 17. There is a well-established process for determining whether an employee is exempt from FLSA overtime pay requirements because he or she is a bona fide executive or administrative employee. Congress did not set forth what defines an employee as executive or administrative. *See* 29 U.S.C. § 213(a)(1). Instead, Congress provided that these terms are to be "defined and delimited from time to time by regulations of the Secretary [of Labor]." *Id.* In 29 C.F.R. § 541.214(a), the Secretary established a test for determining whether an employee is exempt because he or she is employed in a bona fide administrative capacity. To determine if an employee is an executive employee, the courts look to 29 C.F.R. § 541.119.

These tests are commonly referred to as the "short tests," and they are designed to be applied to "high salaried" administrative or executive employees. *See Shaw v. Prentice Hall Computer Publishing, Inc.,* 151 F.3d 640, 642–43 (7th Cir.1998). Both tests require that the employee be "compensated on a salary basis of not less than $250 per week[2] exclusive of board, lodging, or other facilities." 29 C.F.R. § 541.119(a). *See also* 29 C.F.R. § 541 .214(a). This part of the inquiry is com-

monly referred to as the "salary test." The administrative test also requires (1) that the employee's primary duty must involve "the performance of office or non-manual work directly related to management policies or general business operations of the employer" and (2) that "the performance of such primary duty includes work requiring the exercise of discretion and independent judgment." 29 C.F.R. § 541.214(a). *See also Shaw,* 151 F.3d at 643; *Piscione,* 171 F.3d at 533. The executive test calls for a showing that (1) the employee's primary duty consists of the management of the enterprise or of one of its regular subdivisions and that (2) the employee customarily and regularly supervises the work of two or more other employees. 29 C.F.R. § 541.119(a); *see also DiGiore,* 172 F.3d 454, 460–61. These questions are referred to as the "duties test." The elements of both the salary test and the duties test must be met for Defendants to show that Graham, Merriweather, and Demos are exempt employees. *Piscione,* 171 F.3d at 533–34. Plaintiffs argue that their situations do not meet either the salary test or the duties test and that, therefore, there is a genuine issue of material fact as to their status, precluding summary judgment for Defendants.

*Salary Test*

■ We address the salary test first. No one disputes that Graham, Merriweather and Demos earned over $250 per week. However, Plaintiffs maintain that they were not paid "on a salary basis" as defined by FLSA regulation 29 C.F.R. § 541.118. Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pls.' Memo.") at 4–5. This regulation provides that an employee is paid on a salary basis if she "regularly receives each pay period on a weekly or less frequent basis, a predeter-

---

**2.** This amount was established in February of 1975. 40 Fed.Reg. 7092. The Court notes that, as time has passed, inflation has made

"high salaried" a misnomer as applied to many of the employees subject to this test.

mined amount constituting all or part of [her] compensation, which amount is not subject to reduction because of variations in the quality or quantity of work performed." 29 C.F.R. § 541.118(a). The employee must be paid for any week in which she performed any work, regardless of the number of days or hours worked that week. *Id.* The regulation further specifies that deductions in pay may be made for absences of a day or more from work for personal reasons or illness. § 29 C.F.R. 541.118(a)(2)-(3). However, a rule typically referred to as the "no-docking rule" prohibits pay deductions for absences of less than a day. *Id.* In fact, requiring an employee to work at least eight hours in a day "strongly suggests" that the employer sees the employee as an hourly, rather than as a salaried, worker, especially when deductions result from absences. *See Yuen v. U.S. Asia Commercial Dev. Corp.,* 974 F.Supp. 515, 524–25 (E.D.Va. 1997). In sum, the regulations take the view that an employee whose pay is reduced depending on her hours at work is not a salary employee, but an hourly employee, and entitled to overtime for those weeks in which she works in excess of 40 hours.

The record clearly shows that Plaintiffs' pay is subject to reduction for absences of less than a day. Defs.' Facts, ¶ 13. As employees classified as exempt, Graham, Merriweather, and Demos were required to work a "normal 8–hour work day" and to charge any time not worked during a regularly scheduled workweek to leaves accrued pursuant to office policies. *Id.,* ¶¶ 13, 28. Employees accrued various types of leave, including vacation and sick leave, depending on length of continuous employment with the City. Employee Manual, Demos Deposition of July 7, 1999 ("Demos Depo. of July 7"), Defs.' Ex. 6. When an employee worked less than 40 hours in a week, he was expected to record the number of leave hours on the time sheet necessary to make up the difference between the number of hours worked and 40 hours. If an employee had no available leave hours or chose not to use them, his pay was docked for any hours short of 40 hours not worked during that work week. Defs.' Facts, ¶ 23.

The City defends its practices on the basis of a regulation stating that:

"an employee of a public agency who otherwise meets the requirements of § 541.118 shall not be disqualified from exemption [as an executive, administrative or professional employee] on the basis that such employee is paid according to a pay system established by statute, ordinance, or regulation, or by a policy or practice *established pursuant to principles of public accountability,* under which the employee accrues personal leave and sick leave and which requires the public agency employee's pay to be reduced ... for absences for personal reasons or because of illness or injury of less than one work-day when accrued leave is not used by an employee ... "

29 C.F.R. § 541.5d(a) (emphasis added). Defendants contend that "public employers are allowed to make deductions from an exempt employee's pay for hours equaling less than one work day when accrued leave is exhausted, is not used, or is unavailable." Defs.' Memo at 8 (citing 29 C.F.R. § 541.5d). As a statement of the law, the City's argument is not the whole story. Also, Defendants fail to marshal the facts to support their argument that the exception for public employers is applicable to their case. This failure is fatal to their summary judgment motion.

The regulation clearly states that the pay-docking system of public employers must be "established pursuant to principles of public accountability." 29 C.F.R. § 541.5d. "Public accountability" is often defined as the principle that "taxpayer funds not be used to pay public employees for hours not worked." *Jackson v. Commonwealth of Kentucky,* 892 F.Supp. 923, 932 (E.D.Ky.1995); *see also Meringolo v. City of New York,* 908 F.Supp. 160, 165

(S.D.N.Y.1995). Some courts have held that any requirement that a public employee record her work hours satisfies the regulatory standard in 29 C.F.R. § 514.5d that these systems for docking pay be part of "a policy or practice established pursuant to principles of public accountability." *See, e.g., Arrington v. City of Macon,* 973 F.Supp. 1467, 1471 (M.D.Ga.1997) ("Such policies [of requiring exempt employees to keep time sheets] are not inconsistent with the FLSA in that they are premised on the concept of public accountability ..."). In contrast, the Tenth Circuit requires a municipality claiming this defense to offer facts leading to the inference that its system for docking pay is actually a policy based on principles of public accountability. *Spradling v. City of Tulsa, Oklahoma,* 95 F.3d 1492, 1499–1500 (10th Cir.1996) (upholding district court finding that city had not offered sufficient evidence on this issue when city argued that state constitution permitted tax collection only for public purposes and that paying employees for time not worked was not a public purpose). The Seventh Circuit has not ruled on the issue of what facts are necessary to establish that a public employer's pay docking system is part of a policy or practice established pursuant to principles of public accountability.[3]

■ Given the standard for succeeding on a motion for summary judgment, we consider the reasoning of the Tenth Circuit persuasive. The City cannot simply claim that its docking system is based on a policy of public accountability. As in *Spradling,* 95 F.3d at 1499, Defendants here must allege facts to support their claim that the exception to the nodocking rule

applies to them. The Seventh Circuit clearly allocates to the employer the burden of establishing whether an employee fits within an exemption to the overtime pay requirements of the FLSA. *Piscione,* 171 F.3d at 533 (citing *Corning Glass Works,* 417 U.S. at 196–97, 94 S.Ct. 2223). Coupled with this burden is the standard for a summary judgment motion. To determine whether there is a genuine issue of material fact, we construe all facts in the light most favorable to the nonmoving party and draw all reasonable and justifiable inferences in that party's favor. *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. 2505. Defendants have the burden of establishing that Merriweather, Graham and Demos were exempt employees under the FLSA, and, as the moving party, the facts are not construed in their favor.

■ Despite these hurdles, Defendants have not offered a single fact to indicate that their system for docking pay is based upon principles of public accountability. They have not cited any city ordinance or any provision in an employee manual indicating that the purpose behind the system is to ensure public accountability. In fact, Defendants never even acknowledge that the regulation under which they claim an exception requires that their docking system be based on a policy established pursuant to principles of public accountability. If the Court were to assume that the City's system for docking pay is based on principles of public accountability, the express language of the regulation would become something close to a dead letter. Either the plaintiff would be required to demonstrate that the docking system was

---

**3.** In *Mueller v. Reich,* 54 F.3d 438, 442 (7th Cir.1995), *vacated on other grounds, Wisconsin v. Mueller,* 519 U.S. 1144, 117 S.Ct. 1077, 137 L.Ed.2d 212 (1997), a public employer tried to defend its practice of disciplining allegedly exempt employees by imposing suspensions for less than a week, a course of action not at issue here. In providing the historical background for rejecting the state's defense, the Seventh Circuit noted that the suspicion that civil servants are not assiduous

"is deeply embedded in the American political culture." *Id.* at 442. Unfortunately for Defendants here, the drafters of the regulation did not take an anthropological approach. The system permitting pay deductions for time absent from work must be based on a statute, ordinance, regulation, policy or practice established pursuant to principles of public accountability, not on a "culture" of mistrust of government. 29 C.F.R. § 541.5d(a).

not based upon public accountability laws or principles or every public employer would automatically be able to take advantage of 29 C.F.R. § 541.5d, regardless of the purpose behind the employer's system for reducing pay. *Spradling*, 95 F.3d at 1499. Considering that this question is before the Court on Defendants' motion for summary judgment and that the burden of proving that a particular employee is an exempt employee is on Defendants, we justifiably refuse to assume any particular purpose for Defendants' docking system.[4]

▮▮▮ This failure by Defendants to alert the Court to facts in support of their argument is enough to allow us to conclude that the they have not satisfied the salary test. However, Plaintiffs advance other arguments as well that the salary test has not been met, which contentions we will briefly consider. First, Plaintiffs maintain that certain employment requirements concerning time records and meetings negate their exempt status. Graham, Merriweather, and Demos were required to record their attendance at work for an eight hour day, and they sometimes documented the hours they worked beyond the normal eighthour day on their time sheets. Defs.' Facts, ¶¶ 25, 28. They cite these facts as indications that they were not salaried workers. Pls.' Memo. at 5. We are not persuaded by this argument. Time-keeping alone does not show that these employees were non-exempt. In fact, it is a necessary function of the pay-docking system discussed above and of the overtime payments mentioned below. It is essential to know how many hours a particular employee worked in order to dock or increase her pay accordingly. Whether requiring Merriweather, Graham, and Demos to record their time at work undermines their exempt status stands or falls with the determination on the validity of the docking or overtime payment systems, discussed elsewhere in this opinion. We further note that there may be myriad reasons to require employees to record their work time. Lawyers, for instance, are usually classified as exempt workers, but they are often required to record their time in six minute intervals for client-billing purposes. Plaintiffs also complain that they were required to attend work meetings before and after the regularly scheduled work day in violation of exempt status under the FLSA. In *Shaw*, 151 F.3d at 641, the Seventh Circuit made clear that exempt employees need sometimes work before and/or after the regularly scheduled work day in order to fulfill the duties of their jobs. The plaintiff in *Shaw* often worked into the early morning to meet production schedules, yet she was found to be an exempt employee. *Id.* The District of Columbia Circuit correctly noted that "[t]he underlying logic [of the salary-basis test] ... is that payment on salary basis is thought to identify executive, administrative, and professional personnel precisely because it indicates employees who ... are not answerable merely for the number of hours worked." *Hilbert v. District of Columbia, A Municipal Corp.*, 23 F.3d 429, 432 (D.C.Cir.1994) (internal quotations omitted). Such underlying logic, however, does not mean that time is a minor issue

---

4. The Court is especially reluctant to conclude, absent the presentation of supporting facts, that the City's docking system is based on principles of public accountability because Plaintiffs suggest another purpose for the system. They argue that the Mayor made unrealistic campaign promises concerning government productivity and streamlined budgets. Pls.' Memo. at 1–2. In order to realize these "unrealistic" goals, Plaintiffs' argument goes, Defendants circumvented the dilemma of more productivity for less money by violating the FLSA. *Id.* Specifically, according to Plaintiffs, the City cut clerical staff so that exempt employees must assume these duties and stopped updating employee classifications in order to avoid overtime payments. *Id.*

We will not weigh in on the merits of Plaintiffs' argument. We need not determine whether their contention has merit, and in any event, at this stage of the litigation, Plaintiffs do not have the burden of establishing a purpose for the City's docking system.

for exempt employees, as Plaintiffs unsuccessfully argue.

■ Plaintiffs present one more argument in support of their view that Defendants have not met the salary test for exempt employees under the FLSA. Graham, Merriweather, and Demos point out that other employees classified as exempt who held positions similar to their own were paid overtime at the rate of time and a half when they worked over forty hours in a workweek. Plaintiffs' Statement of Additional Material Facts ("Pls.' Facts"), ¶¶ 27–29. Plaintiffs argue that such overtime payment is inconsistent with exempt status under the FLSA because it demonstrates that the employees were not paid on a salary basis. Pls.' Memo. at 6. Leaving aside the issue of whether questioning the exempt status of other employees undermines the exempt status of the employees before the Court, Plaintiffs' argument is again unpersuasive. Such payments are generally permitted by the regulations setting forth the test for determining if an employee is paid on a salary basis. In expanding on the meaning of "salary," one regulation states that "the salary may consist of a predetermined amount constituting all or part of the employee's compensation. In other words, additional compensation besides the salary is not inconsistent with the salary basis of payment." 29 C.F.R. § 541.118. Case law supports the view that payments made to some City employees who worked more than forty hours in a workweek did not destroy their exempt classification. In *Pautlitz v. City of Naperville*, 781 F.Supp. 1368, 1371 (N.D.Ill. 1992), police sergeants were paid straight overtime for hours worked in excess of 45 in a given workweek. The court found that this pay system operated on a salary basis because its purpose was "to reduce inequities in compensation and to award

salaried employees for commitment to their duties beyond the standard week." *Id.* Plaintiffs' own evidence presented on this question indicates that the overtime pay received by other exempt City employees was for the same purposes. Graham, Merriweather, and Demos maintain that some supervisors at the Department of Public Works were compensated for overtime so that the union employees they supervised would not out-earn them. Pls.' Facts, ¶ 28. The *Pautlitz* plaintiffs received overtime compensation for precisely this same reason. *Pautlitz*, 781 F.Supp. at 1371. Also, while it is unclear exactly how overtime was calculated for the employees who did receive such payments,[5] it appears that, like the *Pautlitz* plaintiffs, they too were compensated for their "commitment to their duties beyond the standard week." *Id.*

### Duties Test

We state again the principle that the burden falls on the employer to establish that an employee fits within an exemption, and this burden is heightened when the employer is the moving party in a summary judgment motion. Although the Court could dispose of this motion on the basis of Defendants' failure to establish that there is no genuine issue of material fact as to whether Graham, Merriweather and Demos were paid on a salary basis, we will consider the City's arguments concerning the duties test. Because the analysis under the duties test requires close attention to the facts, *see Piscione,* 171 F.3d at 536–37 (detailing work activities of plaintiff); *Keller v. City of Columbus, Indiana,* 778 F.Supp. 1480, 1481–84 (S.D.Ind.1991) (same), the job responsibilities of each plaintiff will be detailed in turn.

---

**5.** Plaintiffs' evidence includes charts entitled "How Much Overtime Biweekly YTD as of 12/31/96" and "How Much Overtime Biweekly YTD as of 12/31/97." Pls.' Exs. O–P. However, none of the columns in the chart are labeled, and its unclear what the various numbers signify.

### Marion Merriweather

Merriweather's duties for the City changed when she moved from one division to another during the course of her employment. We attempt, therefore, to determine whether her work met the duties test for exemption from FLSA for each position separately. First, we ask, did Merriweather meet the duties test for exempt employees while she worked at the Office of Youth and Family Services ("OYFS") in various capacities from January 11, 1996 until she left the position three months later, in April of 1996. January 11, 1996 is the starting date for our analysis because all claims based on actions prior to that date are barred by the statute of limitations, as previously discussed. Second, we will examine Merriweather's duties when she worked at the Department of Parks and Recreation ("DPR").

### Merriweather's Work at OYFS

#### Executive Exemption

To show that Merriweather was an exempt employee under the executive exemption while she worked at OYFS, Defendants must show that Merriweather's duties, during the relevant time period, "include[d] the customary and regular direction of the work of two or more other employees [in the department]." 29 C.F.R. § 541.119(a). Despite Defendants' resort to some fairly facile reasoning in an attempt to convince the Court otherwise, Defendants fail to show that there is no genuine issue of material fact as to whether Merriweather supervised the requisite number of employees. Pls.' Facts, ¶ 68 (citing to Merriweather Affidavit ("Merriweather Aff."), ¶ 11) states that "[w]hile she was working at OYFS, all three of the persons she supervised resigned or transferred to other departments in the City, and after approximately January of 1996, she was no longer responsible for supervis-

ing any employees." Defendants contend that Merriweather is attempting to create a genuine factual dispute by submitting an affidavit that conflicts with her own deposition testimony, in violation of the Seventh Circuit rule in *Piscione*, 171 F.3d at 532, that an affidavit contradicting earlier deposition testimony cannot be used to defeat a summary judgment motion. Such self-serving affidavits are understandably suspect and should "be disregarded unless it is demonstrable that the statement in the deposition was mistaken, perhaps because the question was phrased in a confusing manner or because a lapse of memory is in the circumstances a plausible explanation for the discrepancy." *Russell v. Acme–Evans Co.*, 51 F.3d 64, 67–68 (7th Cir. 1995). Another reason to accept an arguably "self-serving" affidavit is when the plaintiff's non-specific answer is given in response to a vague deposition question; we think that was the case here. In her deposition, Merriweather was asked whether she supervised any employees while working at OYFS, and she responded that she supervised three or four employees. Merriweather Deposition ("Merriweather Depo.") at 16. Merriweather was also asked how long she worked at OYFS, and she answered, after some discussion and confusion, that she worked there until April of 1996. Merriweather Depo. at 17.[6] From these two statements, separated by a brief repartee concerning her next position for the City, Defendants reason that Merriweather's affidavit contradicts her deposition testimony in violation of *Piscione*. Defendants' Reply and Objections to Plaintiffs' Statement of Additional Material Facts ("Defs' Facts Reply"), ¶ 68 ("Merriweather stated under oath at her deposition that she supervised four employees while in her position at the Office of Youth and Family Services and that she worked at OYFS until April

---

6. Defendants also cite to another part of the Merriweather Deposition, specifically page 24, lines 6–11. Perhaps this testimony would bolster Defendants' argument, but it is un-

available to the Court because Defendants did not include page 24 of her deposition in their filings.

1996."). Merriweather was not asked during her deposition if she supervised all of these three or four employees for the entire three years she worked at OYFS, and there is no reason to assume that she did from the context of the discussion during the deposition. Merriweather's affidavit is more fairly viewed as a clarification of her deposition testimony, not as a refutation of it. This understanding of the issue is buttressed by Defendants' failure to present any evidence, such as an organizational chart or job description current for January to April of 1996, showing that Merriweather did, in fact, supervise two or more employees at OYFS. Defendants thus fail the duties test for showing that Merriweather was an exempt executive employee and, on that basis, are not entitled to summary judgment.

*Administrative Exemption*

We next address the issue of whether Merriweather, during the time she worked at OYFS, met the duties test for employees covered by the administrative exemption to the FLSA. Prior to our discussion of her activities at OYFS, in light of the case law, it is necessary to briefly examine the positions held by Merriweather at OYFS. The parties' submissions on this topic are somewhat confusing as to which positions Merriweather actually held at OYFS. In its Statement of Material Facts, Defendants state that Merriweather worked at OYFS as financial advisor and office manager. Defs.' Facts, ¶ 100. Plaintiffs "incorporate by reference" this statement of fact. Plaintiffs' Objections and Responses to the Defendants' Statement of Material Facts ("Pls.' Obj."), ¶ 17. However, Plaintiffs later state, in the same document, that Merriweather started at OYFS as administrative assistant, received the title of support services coordinator in April of 1994, and was subject to a title change in December of 1994 to financial advisor. Pls.' Facts, ¶¶ 66–67. Defendants do not directly disagree with this presentation of the facts, Defs.' Facts Reply, ¶¶ 66–67, referring to ¶ 60 ("Defen-

dants object on the basis that any claims accruing prior to January 11, 1996, are barred by the statute of limitations. Thus, even if true, Plaintiffs' allegation is immaterial."), but their own presentation of the facts does not indicate any change in title during Merriweather's tenure at OYFS. According to Defendants, Merriweather was office manager and financial advisor the entire time she worked at OYFS. According to Plaintiffs, Merriweather worked in the consecutive positions of administrative assistant, support services coordinator, and financial advisor. In a slightly different situation, all of these contradictions could be merely a curious example of sloppy briefing because the key issue in an FLSA claim is an employee's specific work activities rather than her job title. 29 C.F.R. § 541.201(b)(1)-(2). However, the timing of Merriweather's duties is important to her case because of the statute of limitations, and the parties sometime preface statements about Merriweather's duties with phrases like "as Coordinator" and "as financial advisor" but do not provide dates for the duration of these duties. In these situations, we cannot determine whether the activity in question occurred within the statute of limitations. The discussion of Merriweather's duties that follows notes, where relevant, the lack of clarity regarding when Merriweather performed certain tasks.

In order to meet the duties test for administrative employees, Defendants must show that Merriweather's primary duties consisted of "the performance of office or nonmanual work directly related to management policies or general business operations of the employer" and that the exercise of those duties required "the exercise of discretion and independent judgment." 29 C.F.R. § 541.214. There is little question that Merriweather's duties involved the performance of office or nonmanual work directly related to the general business operations of OYFS. However, whether Merriweather's tasks required the exercise of discretion and independent

judgment is a contested issue. To meet this burden, Defendants must demonstrate that her work "involve[d] the comparison and evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.207(a).

In support of its position that Merriweather's duties qualified her as an exempt administrative employee when she served as financial advisor, Defendant points out that Merriweather met the following objectives as outlined in the "Objective Statements" signed by her: "[t]o ensure sufficient resources for the operation of OYFS; [t]o ensure funds expended on programs are in accordance with OYFS' goals/objectives and adhere to policies and guidelines of federal and state funding agencies; [m]aintain [sic] accountability and efficiency in providing financial support for effective delivery of services to youth and families; [p]rocess [sic] contracts to ensure timely implementation of services; [and][e]stablish [sic] collaborative efforts with OYFS and other City agencies." Merriweather Depo., Ex. 4. As worded, to meet these broad goals, Merriweather certainly would have needed to skillfully exercise discretion and independent judgment. However, the applicable regulations require analysis of the employee's activities and prohibit reliance on job titles. 29 C.F.R. § 541.201(b)(1)-(2). Reliance on the employer's characterization of those activities through an employer-created job description is similarly suspect, *Cooke v. General Dynamics Corp.*, 993 F.Supp. 56, 61 (D.Conn.1997) (citing § 541.201(b)). Therefore, we shall undertake a careful factual analysis of these duties and of any changes in these duties during the period for which Merriweather seeks overtime compensation in order to determine whether her tasks satisfy the duties test for exempt administrative employees.[7] *Id.*

Plaintiffs maintain that "Merriweather's activities in respect to achieving these goals were clerical in nature." Pls.' Facts, ¶ 70 (citing Merriweather Aff., ¶ 12). If so, Merriweather's activities performed to achieve the objective statements did not require the exercise of independent judgment. Defendants argue that Merriweather's characterization of her job contradicts her deposition testimony in a way prohibited by *Piscione*. As in the analysis of whether Merriweather qualifies as an exempt employee, this argument fails. Our review discloses that Merriweather's affidavit on her goal-oriented duties does not contradict her deposition testimony. In her affidavit, Merriweather states, "[m]ly primary duties at OYFS included maintaining departmental records and logs, processing invoices, maintaining computer operations, coordinating clerical support, inventory of supplies, keeping office inventories, logging receipt of goods, and preparation of vouchers for payment to vendors." Merriweather Aff., ¶ 13. Rather than repudiating her deposition testimony, Merriweather's affidavit fleshes out the details of her duties as outlined in the Objectives Statement. In contrast, in *Piscione*, 171 F.3d at 536, the plaintiff's affidavit stated, "I did very, very little training at any point in time, and only for certain rote tasks performed by entry level persons." This affirmation directly contradicted his deposition evidence showing that he was "deeply involved in training a new hire" and that he gave substantive guidance to junior employees from whom he had requested assistance for specific projects. *Id.* at 537.

7. Defendants fail to indicate the effective dates of the "Objectives Statement," but the form states that it is the statement for the position of financial advisor. Since the facts as presented by both parties show that Merriweather was financial advisor toward the end of her tenure at OYFS, the information contained in this form is worth considering. However, because it is not clear that the statement covers Merriweather's activities after January 11, 1996, it is imperative that we closely examine Merriweather's actual activities on the job.

The burden is on Defendants to establish what Merriweather's activities were in relation to the Objective Statements. Merriweather has provided the Court with evidence detailing her duties, and the City has offered no specific examples to contradict Merriweather's affidavit, such as evidence that Merriweather made decisions about who to work with in order to "[e]stablish[ ] collaborative efforts with OYFS and other City agencies." Objective Statements, Ex. 4. The conclusion reasonably drawn from her affidavit is that her work at OYFS did not require the exercise of discretion and independent judgment. Defendants cannot establish that there is no genuine issue of material fact as to whether Merriweather was an exempt administrative employee without offering specific evidence to the contrary about her job tasks.

The City also maintains that Merriweather was "responsible for compiling the budget" when she was the financial advisor at OYFS. Defs.' Facts, ¶ 106. Depending on what Merriweather did to "compile" the budget, her duties may have required her to choose from among multiple courses of conduct. If so, she would meet the duties test for administrative employees. To specify the details of her duties, Defendants call the Court's attention to Merriweather's deposition testimony concerning her work on the budget in which she states, "I met with the different heads of each section in Youth and Family Services and found out what their budget needs were. Because the budgets were pretty much based on the budgets in previous years, so that was already in place. And you just sat down and found out what their needs were. And then I went on line and then put the budget on line." Merriweather Depo. at 18. In her affidavit, Merriweather elaborates on the tasks she performed to compile the budget. She states, "I met with each manager and collected the input data forms they had used to determine their budgets and I collected them and data entered the budget information in to the Financial Accounting Management Information System (FAMIS)." Merriweather Aff., ¶ 20.

Once again, Defendants attempt to cast doubt on Plaintiffs' account by arguing that Merriweather's affidavit contradicts her deposition testimony in a way prohibited by *Piscione*. As before, this argument fails. Merriweather's affidavit detailing her budget work does not contradict her deposition testimony. Instead, her affidavit elaborates on her duties as sketched in her deposition. In addition, neither characterization of her work on the budget, including the picture advocated by Defendants, indicates conclusively that Merriweather exercised the discretion and independent judgment required of an administrative employee classified as exempt under the FLSA. In *Orphanos v. Charles Industries, Ltd.*, 1996 WL 437380, at *3 (N.D.Ill. Jul. 29, 1996), the plaintiff was found to have exercised discretion because she "was given wide latitude to fashion solutions to customer's problems...." Likewise, a production editor was found to have exercised discretion "in making editorial choices to improve the clarity and user-friendliness of the text and the index, approving or disapproving proofreaders' and copy editors' edits, ... [and] making suggestions to her managing editor regarding re-prioritizing or changing those ultimate deadlines ..." *Shaw v. Prentice Hall, Inc.*, 977 F.Supp. 909, 916 (S.D.Ind. 1997), *aff'd*, 151 F.3d 640 (7th Cir.1998). In contrast, there is no evidence here that Merriweather's budgetary duties involved independent judgment. Unlike the plaintiffs in *Orphanos* and *Shaw*, there is no indication that Merriweather could "fashion solutions" or even suggest changes if a department head's budget request appeared too high or if she felt that the department head had placed the wrong priority on certain projects. The evidence currently before the Court suggests that Merriweather may have done little more than record and relay the department heads' budget requests to her

supervisor at OYFS, Joe Wynns, and perhaps to the City County Council. Merriweather Depo. at 18–19. This evidence simply does not establish that there is no genuine issue of material fact as to whether Merriweather's work on the budget met the duties test for administrative employees.

While serving as financial advisor at OYFS, Merriweather also supervised Don Jervis, who was responsible for receiving the agency's money on-line from INET and then dispersing it to various categories according to the agencies' contracts. Merriweather Depo. at 20. As a supervisor, Merrriweather would meet with Jervis to ensure that the proper amounts of money came in and that it was being dispersed appropriately. *Id.* In this role, Merriweather may have been required to exercise independent judgment, perhaps in interpreting the agencies' contracts or the relevant federal and state regulations, although Defendants make no such argument. However, as discussed above, by January 11, 1996, Merriweather was no longer supervising Jervis, and her deposition testimony is unclear as to her responsibilities regarding the disbursement of funds once he left OYFS. Defendants cannot cite to her supervision of Jervis as evidence that she exercised discretion and independent judgment unless the City first offers more information on the timing of her duties.

Defendants suggest another activity requiring the exercise of independent judgment in Merriweather's job. The City claims that Merriweather installed a new computer network system at OYFS. Defs.' Facts, ¶ 104 (citing Merriweather Depo. at 16). Defendants, however, do not specify when, during her tenure at OYFS, Merri-

weather performed this possibly daunting task. Because Defendants have the burden of establishing that there is no genuine issue of material fact in order to be entitled to summary judgment, the Court declines to assume that Merriweather installed the computer system during her four months at OYFS that fall within the statute of limitations. In short, Defendants have not established that Merriweather met the duties test for the administrative exemption when she worked at OYFS through this, or any other, profered evidence.

*Merriweather's Work at DPR*

The Court next considers whether Merriweather's work at the Department of Parks and Recreation qualifies her as an exempt administrative employee.[8] As with her work at OYFS, Merriweather's duties and job titles[9] changed during her tenure at DPR. From April of 1996 to approximately March of 1997, Merriweather worked as a project manager. Defs.' Facts, ¶ 125. Also, for four months sometime in 1997, Merriweather assumed secretarial duties for Joe Wynns, Deputy Director of DPR and Merriweather's supervisor. Pls.' Facts, ¶ 85. In March of 1997, Merriweather became project manager for the Work Management System ("WMS"), a computer system used to track the resources used in DPR projects. Defs.' Facts, ¶¶ 125, 128. Because her duties changed with each change in job title, we will again analyze her exempt status for each position.

During her employment as project manager when she was not filling in as Wynns' secretary, Merriweather's work activities satisfied the duties test for exempt administrative employees. As project manager, Merriweather "would be

8. At no time during her employment at DPR did Merriweather supervise other employees. Merriweather Depo. at 34. For this reason, the Court finds that the City cannot establish that she was an exempt executive employee.

9. Merriweather's formal job title remained the same as it had been when she worked at

OYFS, but the parties do have a shared understanding of her informal job titles when she worked at DPR. Pls.' Obj., ¶ 28; Merriweather Depo. at 34. As with the analysis of her status at OYFS, the key inquiry concerns her actual on-the-job activity, rather than her job title.

the intermediate person that [sic] would track things down" when managers were encountering problems with matters like unpaid invoices, requests for additional telephone lines that had been denied, and equipment that needed to be ordered. Merriweather Depo. at 34. Problem-solving generally requires the exercise of discretion and independent judgment. *Orphanos,* 1996 WL 437380, at *3. This generalization is particularly true when the "trouble-shooting strategies were [not] merely rote applications of previously established procedures." *Id.* Plaintiffs have offered no evidence to show that Merriweather's work in "tracking things down" required her to simply follow established routines.

■ The analysis differs for the period in which Merriweather acted as Wynns' secretary. Here the focus is on which activities constituted Merriweather's "primary duty" as that term is defined under 29 C.F.R. § 541.214 and 29 C.F.R. § 541.103. An employee only qualifies for the administrative exemption if her primary duty consists of office work requiring the exercise of discretion and independent judgment. 29 C.F.R. § 541.214. It is not enough if only a small portion of her work meets those requirements.

The regulations set out "a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time." 29 C.F.R. § 541.103. Although the facts are not entirely clear, it appears that while she worked as Wynns' secretary, Merriweather spent over 50 percent of her time performing activities that do not meet the duties test of the administrative exemption. Merriweather stated that she spent 50 percent of her time performing secretarial duties for about four months in 1997. Merriweather Depo. at 33; Merriweather Aff., ¶ 27. In this position, Merriweather "received visitors, scheduled meetings with in-house staff as well as other outside of DPR, and handled Joe Wynns' correspondence and took dictation." Pls.' Facts, ¶ 86. These duties are not activities requiring the exercise of independent judgment "with respect to matters of significance," as required by the regulations. 29 C.F.R. § 541.207. The remainder of her time was spent doing her prior job duties—specifically problem-solving as discussed above and "projects [Wynns] needed [her] to do." Merriweather Depo. at 31–32. These projects consisted of "[l]etters that he may have gotten in and needed a response" and "visitors that came in to look at the park system and . . . set[ting] up the meetings and things like that." Merriweather Depo. at 32. Merriweather stated that she spent approximately 25 percent of her time on these activities prior to taking on the secretarial duties. Merriweather Depo. at 31–32. No evidence has been offered on whether the proportion of time spent on these duties remained the same, but Merriweather has made clear that at least some of her work consisted of the same duties as before. Merriweather Depo. at 33. Defendants have not provided any argument that these activities required the exercise of independent judgment, meaning that more than 50 percent of Merriweather's work activities did not satisfy the duties test for administrative exemptions.

■ However, this determination does not complete the analysis. "Time alone . . . is not the sole test." 29 C.F.R. § 541.103. "An employee's primary duty is that which is of principal importance to the employer." *Piscione,* 171 F.3d at 541. A number of factors may be relevant to this question, including "the relative importance of the [administrative] duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, [and her] relative freedom from supervision. . . ." 29 C.F.R. § 541.103. Merriweather testified that she was not able to complete the rest of her tasks when she was serving as Wynns' secretary. Merriweather Depo. at 32. Since Wynns was Merriweather's supervisor for all her duties, it appears that he placed priority on having his secretarial

needs met, rather than on Merriweather continuing her problem-solving duties. Hence, the first factor indicates that Merriweather's duties did not satisfy the duties test. As discussed earlier, her activities did not require Merriweather to frequently exercise discretion about significant matters. In addition, Merriweather testified that she reported directly to Joe Wynns for all of these activities. Merriweather Depo. at 31–32. Defendants have not presented evidence that her work was done relatively free from supervision. None of the factors set forth in the regulations debunk the conclusion, drawn from an analysis of the time Merriweather spent on certain job duties, that Merriweather's primary work did not satisfy the duties test for exempt administrative employees during the time period that she worked as Wynns' secretary. The relative significance of duties is a factual question, *Yuen,* 974 F.Supp. at 527 (citations omitted), and Defendants have failed to establish that there is no genuine issue of material fact concerning this subject.

■ Merriweather's last job for the City was that of project manager for the Work Management System at DPR. In this position, Merriweather estimated that she spent about 75 percent of her time implementing and maintaining WMS and about 25 percent of her time working as union liaison. Her tasks in implementing and maintaining WMS varied. Merriweather met with another DPR employee, Doug King, to gather information about available work management systems and the Department's needs. Pls.' Facts, ¶¶ 88–93. The two of them met with DPR staff and union personnel to find out how the information about work hours and other resources expended on projects was then being gathered. *Id.* at ¶ 90. They also met with staff members at other divisions in City government to review how they collected this data. *Id.* at ¶ 91. Along with two other DPR employees, Merriweather and King met with staff of the National Park Service to learn how WMS operated. *Id.* at ¶ 94. This group then met with additional personnel in the Department and, based on these meetings, recommended to Joe Wynns that DPR implement WMS. *Id.* at ¶ 96. These activities required Merriweather to exercise discretion and independent judgment with regard to a matter of significance under 29 C.F.R. § 541.207. Wynns made the final decision to authorize the use of WMS and the recommendation for its authorization was made by committee, but Merriweather still exercised discretion and independent judgment in helping the committee to make the recommendation. The FLSA "does not require this judgment to be made in isolation." *Piscione,* 171 F.3d at 535 (citations omitted). Even work subject to approval or performed collaboratively can constitute evidence of the exercise of discretion and independent judgment. *Id.*

Merriweather had additional duties related to WMS during the remainder of her time working for the City. She copied pages from the computer manuals and gave them to supervisors and managers to complete. Pls.' Facts, ¶ 101. These pages were sample data input forms. *Id.,* ¶ 95. Merriweather then began entering the data she received from the managers and supervisors into WMS. *Id.,* ¶ 102.[10] She was also responsible for scheduling and videotaping training sessions and downloading data form clerks in other departments. *Id.,* ¶¶ 106–107. Such activities do not require the exercise of discretion and independent judgment required for an em-

---

**10.** Defendants object to this evidence on the ground that Merriweather was not solely responsible for data entry. Defs.' Facts Reply, ¶ 102. Whether other employees performed the same work as Merriweather is not relevant to the question of her primary duties. Logic shows that, if a lot of data must be entered into WMS, it is likely that Merriweather did not do all of the data entry on her own. But this observation does not lead to the conclusion that Merriweather did not spend a majority of her time performing data entry.

ployee to be an exempt administrative employee under the regulations.

The record does not provide any evidence of the relative amounts of time she spent on her more complicated WMS tasks as compared to data entry. Defendants also failed to provide any evidence concerning the relative importance of these tasks so that the Court could analyze them using the factors set forth in 29 C.F.R. § 541.103 and in *Piscione*. Without this information, Defendants have failed to establish that there is no genuine issue of material fact as to whether Merriweather met the duties test for administrative employees when she worked as project manager for WMS. Also relevant to this question at the trial stage will be an analysis of her duties as union liaison, a job taking approximately 25 percent of her time while she also worked as project manager for WMS. The record contains little information on the details of her work as union liaison.

### Ronald Graham

Ronald Graham worked as a Facilities Maintenance Supervisor at DPR from December of 1994 until his retirement on June 30, 1998. Defendants maintain that Graham was exempt from the overtime requirements of the FLSA as either an executive or an administrative employee. Defs.' Memo. at 13–14. Again, we examine each of these arguments in turn.

### Executive Exemption

To show that Graham was an exempt employee under the administrative exemption, the City must demonstrate that Graham's "primary duty consists of the management ... of a customarily recognized department or subdivision [of DPR] and includes the customary and regular direction of the work of two or more employees therein." 29 C.F.R. § 541.119(a). The Court finds that the City has met its burden of establishing that Graham's work primarily consisted of management, includ-

ing the supervision of numerous employees.

In defining "management," the Department of Labor explains that the following tasks are exempt when done by an employee in the management of a division or in the supervision of employees working for him: "[i]nterviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used ...; controlling the flow and distribution of materials ...; providing for the safety of the men and the property." 29 C.F.R. § 541.102(b). Graham did not do all of these activities. Neither did he do only these activities. However, they constituted his primary duties.

As an overview, Graham testified that he spent approximately 40 percent of his time in the field on the job sites supervising employees. Graham Deposition ("Graham Depo.") at 21–22. Until September of 1996, Graham supervised nine employees. Defs.' Facts, ¶¶ 48, 76. When another Facilities Maintenance Supervisor left, he assumed the supervision of an additional eight employees. *Id.*, ¶ 77. As part of his supervisory duties, Graham provided input in hiring decisions, Graham Depo. at 15–16, and could initiate disciplinary actions by writing up a union employee for an infraction of the rules governing their work. *Id.* at 14. He decided which crew would receive an assignment after the work request had been called in from a DPR facility. *Id.* at 13. He authorized the purchase of the various tools and equipment used by the workers under his supervision. *Id.* at 46. In addition, Gra-

ham developed certain safety precautions to ensure that the employees wore the safety equipment provided to them. *Id.* at 18. All of these activities are exempt duties when they are performed as part of the supervision of employees, as is the case here. 29 C.F.R. § 541.102(b).

Plaintiffs maintain that, because these supervisory duties constituted only 40 percent of his duties, Graham's primary duty was not management. Pls.' Memo. at 10. We disagree. Graham estimated that much of the rest of his time was spent on "paperwork" and that his duties in this area increased as he neared retirement. Graham Depo. at 28–30, 50–51. Contrary to Plaintiffs' argument, some of this paperwork counts as exempt work because it is "directly and closely related" to his exempt work. 29 C.F.R. § 541.101; 29 C.F.R. § 541.108. For instance, Graham spent about 25 percent of his time preparing reports on the progress his supervises made toward meeting the goals and objectives of the department. Graham Depo. at 34. These records included information on the number of workers on a job, the number of jobs completed, and the number of jobs not completed because of a shortage of workers or materials. *Id.* at 67. Such reports are essential to monitoring and managing the work of the of the 17 employees under his control. 29 C.F.R. § 541.108(b).

Graham also argues that he was a "working foreman" and, therefore, not an exempt executive employee. Pls.' Memo. at 12. A working foreman "works alongside his subordinates," in addition to performing supervisory functions, and is not an exempt executive employee. 29 C.F.R. § 541.115. As Graham testified, union rules significantly restricted the amount of work Graham could do with the workers he supervised. Graham Depo. at 93. Graham occasionally did some of the manual labor himself, especially when he was "on call" for emergencies, but he admits that even fairly simple procedures were off-limits to him under the union contract and

that he made a serious effort to obey the terms of the contract. *Id.* at 93–95. This result is in keeping with the case law. As an example, in *Anderson v. City of Cleveland, Tennessee,* 90 F.Supp.2d 906, 920 (E.D.Tenn.2000), the court found that employees who very rarely performed the basic work of their supervise police officers, such as issuing citations and investigating crimes, were not working foremen.

*Administrative Exemption*

Defendants cannot show that Graham was an administrative employee. As discussed above, most of his time was spent performing management duties. He certainly performed some office work directly related to the general business operations of the department, as required by 29 C.F.R. § 541.214. However, this work did not require the exercise of discretion or independent judgement, as also required by the regulations. A brief discussion suffices, as the City has succeeded in showing that Graham met the duties test for an exemption with its evidence that he was an executive employee.

■ One of Graham's "paperwork" activities included answering correspondence from contractors requesting deadline extensions or permission to substitute materials. Graham Depo. at 38. Drafting responses to these letters as Graham often did, Graham Aff., ¶ 45, is the type of office work contemplated by the regulations as administrative work. However, Graham's drafts often consisted of simply putting into writing the verbal instructions his supervisor, Steve Waltz, had given him concerning whether the contractors' requests should be granted. *Id.* Such work is secretarial, even though the actual typing of the letter was done by another staff member. In fact, prior to reorganization of DPR in 1995, Graham's tasks on these letters had been done by June Perkins, a clerical worker, who had typed the letters in addition to drafting them. Pls.' Facts, ¶ 41–46.

*Alan Demos*

██ Demos began working for the City in 1993 as Deputy Administrator of Natural Resources for DPR. Defs.' Facts, ¶ 148. In 1994, his job was reclassified under the title "Manager of Asset Planning." Defs.' Facts, ¶ 149. He worked at DPR through the end of 1997, when he transferred to the Department of Capital Asset Management ("DCAM"). His employment with the City was terminated, effective June 8, 1998. He often worked over 40 hours per week and claims that he should receive overtime pay for those extra hours. The City argues that Demos was an exempt administrative employee and not entitled to overtime pay as provided in the FLSA. Defs.' Memo. at 17.

The Court finds that the primary duty of Demos was office work requiring the exercise of discretion and independent judgment, which warrants a finding that Demos was an exempt administrative employee. 29 C.F.R. § 541.214. In 1996, Demos testified that he spent 60 to 70 percent of his time on serving as project manager for the Watkins Community Center and the Bethel Pool Renovation; developing a four-year Asset Plan for the parks; developing a Soap Box Derby Master Plan; and reviewing and commenting on four development projects. Demos Depo. of July 7 at 59 and 85 and Defendants' Exhibit 2., p. 1. As a project manager, Demos attended community meetings to identify the priorities of park users and DPR employees. Demos Depo. of July 7 at 34 and 60. One of his additional tasks at these meetings was to ensure that architects and engineers were fulfilling their contractual obligations to the City. *Id.* at 87. Demos' work in prioritizing the projects is the type of "comparison and evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered" contemplated by the regulations as work typical of administrative employees. 29 C.F.R. § 541.207(a). Likewise, asset planning involved administrative activities. In this job, Demos helped determine which parks and improvements needed to be done, when to do the projects, and where to get the funds for the projects. Demos Depo. of July 7 at 35–39; Demos Deposition of Dec. 2, 1999 ("Demos Depo. of Dec. 2") at 28. He and other staff at DPR provided input on these issues to Steve Waltz, who made the final decision. Demos Depo. of July 7 at 38. For the Soap Box Derby Master Plan, Demos exercised discretion in advising the outside contractors on planning issues and communicating to the community progress in the development of the Soap Box Derby Master Plan. *Id.* at 79–80. He also commented on the pros and cons of four other development projects for DPR and DCAM. *Id.* at 81. These activities are administrative duties under the regulations. Plaintiffs have not shown that there is a genuine issue of material facts as to the administrative nature of Demos' primary duties.

██ In 1997, Demos' duties changed slightly, but they continued to meet the requirements of the regulations governing exempt administrative employees. Demos testified that he spent much of 1997 "putting out fires for Joe [Wynns]" and serving as "the buffer between what Joe wanted done with what the users of the other Parks Department wanted done out in the field." Demos Depo. of Dec. 2 at 16. While this information may reflect poorly on Demos' attitude and on management at DPR, it also shows that Demos exercised discretion in his work. Problem-solving of this nature generally requires more than the "rote applications of previously established procedures" and is evidence of the exercise of independent judgment. *Orphanos*, 1996 WL 437380, at *3. He also took information from the architects and engineers and put it in files after checking to make sure that they had complied with the technical and contractual requirements. Demos Depo. of Dec. 2 at 16–17. In addition, Demos modified the Asset Plan. This work involved talking with managers in DPR to figure out how funding

could be reduced for some projects in order to provide sufficient money to other projects. *Id.* at 27. While Wynns, his supervisor, could reject these proposals or even direct negotiations from the beginning, Demos exercised discretion in making his recommendations. An employee can be exempt even when he does not have the final say on an issue. *Piscione,* 171 F.3d at 535 (citations omitted). These facts show that there is no genuine issue of material fact as to whether Demos met the duties test for exempt administrative employees during his tenure at DPR.

*Conclusion*

For the foregoing reasons, Defendants' Motion for Summary Judgment is *GRANTED,* in its entirety, with respect to Plaintiffs Boswell and Domino and *DENIED,* in its entirety, as it pertains to the Plaintiff Merriweather. Defendants' Motion for Summary Judgment with respect to Plaintiffs Graham and Demos is *DENIED* as to the salary test and *GRANTED* as to the duties test.