In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-2952

ALAN L. DEMOS AND RONALD GRAHAM,

*Plaintiffs-Appellants*,

*v.*

CITY OF INDIANAPOLIS AND BART PETERSON,
MAYOR OF THE CITY OF INDIANAPOLIS,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 99-C-22—**Sarah Evans Barker**, *Judge*.

ARGUED NOVEMBER 26, 2001—DECIDED AUGUST 30, 2002

Before ROVNER, DIANE P. WOOD, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.*   Plaintiffs Alan L. Demos and Ronald Graham brought suit against the City of Indianapolis and Mayor Bart Peterson (collectively "the City"), seeking unpaid overtime pay and vacation time credits allegedly due them under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("the FLSA" or "the Act"). The plaintiffs claim that because the City's policies required that their pay be docked if they failed to work an eight-hour day, they were not salaried employees un-

der the Act. Rejecting these arguments, the district court granted summary judgment to the City, holding that plaintiffs were salaried executive or administrative employees exempt from the FLSA,[1] and as government employees were subject to the Department of Labor's public accountability exception to its no-docking rule. We agree with the district court and affirm the judgment below.

## I. BACKGROUND

This dispute began almost a decade ago, when the City of Indianapolis elected Mayor Stephen Goldsmith.[2] Goldsmith made aggressive changes to staffing and managing City government by eliminating employee positions in several of the City's major agencies and departments. In conjunction with these changes, employees classified as exempt from the Act were instructed to record no more than eight hours per day and forty hours per week in their time records—no matter the hours actually worked beyond that amount. Select salaried supervisors received additional pay for working extra hours; however, other salaried supervisors, including the plaintiffs, did not receive that additional pay. The City also implemented a policy of docking salaried employees if they worked less than a forty-hour week or less than eight hours per day. Under the City's policy, if an employee had a partial day absence, accrued benefit leave would have to cover that absence, or pay would be docked from the weekly salary.

---

[1] An "exempt" employee is one who is not subject to the overtime provisions of the Fair Labor Standards Act. *See* 29 U.S.C. § 213(a)(1).

[2] During disposition of this case below, defendants substituted current Mayor Bart Peterson for former Mayor Goldsmith pursuant to Fed. R. Civ. P. 25(d)(1).

As a result of reduced staffing by the City, Demos and Graham claim that they were required to routinely work more than forty hours per week and their supervisory duties "gradually diminished." Plaintiffs filed this action claiming that they were no longer exempt employees, and the City's failure to pay them overtime violated the Act. After significant discovery and motion practice, the City moved for summary judgment.

Initially, the district court granted summary judgment in part to the City, but found that it failed to provide sufficient undisputed facts regarding whether its employees were paid pursuant to principles of public accountability—and therefore whether it was permitted to dock a salaried employee's pay for time not worked. *Demos v. City of Indianapolis*, 126 F. Supp. 2d 548 (S.D. Ind. 2000). The district court later reconsidered and found that although the City initially failed to prove that it was entitled to the public accountability exception, the court could take judicial notice of various Indiana laws that, coupled with the previously admitted and undisputed evidence, demonstrated that the City proved that it was publicly accountable.[3] Demos and Graham appeal.

## II. ANALYSIS

We review the district court's grant of summary judgment de novo. *See Albiero v. City of Kankakee*, 246 F.3d 927, 931-32 (7th Cir. 2001). When reviewing cases decided on summary judgment, we construe all facts and draw all reasonable inferences in the light most favorable to

---

[3] *Demos v. City of Indianapolis*, 139 F. Supp. 2d 1026 (S.D. Ind. 2001). Other parties to the original action were either dismissed or settled their claims, leaving only Demos's and Graham's claims for this appeal.

the nonmoving party—in this case the plaintiffs. *See id.* Applying these principles, we must decide whether the district court properly determined that: (1) notwithstanding its policy of docking employees for partial-day absences, the City meets the salary basis test because it pays its employees pursuant to principles of "public accountability" and (2) plaintiffs performed executive or administrative duties as defined by the regulations.

Pursuant to the FLSA, employees must be paid at least one and one-half the amount of their regular wages for work beyond forty hours per week or eight hours per day. Persons who are employed "in a bona fide executive, administrative, or professional capacity," however, are exempt from the Act's overtime provisions. 29 U.S.C. § 213(a)(1); *see also* 29 U.S.C. § 207(a)(1). The City claims that Demos and Graham are exempt under the Act, pursuant to a three-part regulation-based analysis commonly referred to as the "short test." *See* 29 C.F.R. §§ 541.119, 541.214, 541.315.

The short test has three elements: (a) the salary basis test, (b) the employee's classification as professional, administrative, or executive, and (c) the employee's duties test. *See* 29 C.F.R. §§ 541.1, 541.118; *see also* 29 C.F.R. §§ 541.2, 541.3. The plaintiffs claim that the City failed to prove each prong of the short test.


A.  The Salary Basis Test

Under the short test's first prong, the City is required to prove that Demos and Graham were paid on a salary basis. Because Demos and Graham were paid more than $250 per week, the City must show that each plaintiff's salary was also: (a) a pre-determined amount constituting all or part of his compensation and (b) not subject to reduction because of variations or quantity of the work performed. *See* 29 C.F.R. § 541.118(a). The City bears the

burden of proof here because the FLSA "is a remedial act and exemptions from its coverage are to be narrowly construed against employers." *Klein v. Rush-Presbyterian-St. Luke's Medical Center*, 990 F.2d 279, 282 (7th Cir. 1993); *see also Bankston v. Illinois*, 60 F.3d 1249, 1252 (7th Cir. 1995).

If an employee's salary is docked for partial-day absences, the regulations presume that the employee is not paid on a salary basis. *See Bankston,* 60 F.3d at 1253; 29 CFR § 541.118.[4] At its inception in 1938, the Act (and therefore the salary basis test) applied only to private sector employers. *See* 29 U.S.C. § 203(d) (1940 ed.), 5 Fed. Reg. 4,077 (Nov. 7, 1940) (salary basis test). However, in 1974, Congress amended the Act to extend its coverage to virtually all employees of state and local governments, except those employees that perform public safety functions. *See* Pub. L. No. 93-259, § 6, 88 Stat. 58-62. Although the Supreme Court initially found that this extension of the Act violated the Tenth Amendment, *see National League of Cities v. Usery*, 426 U.S. 833 (1976), it later held that the Act's provisions were valid as extended to state and local employees. *See Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 540, 556-57 (1985).

In contrast to private sector employers, some government employers dock the pay of salaried workers for absences of even one hour during a forty hour work week, either because they are required by law to keep track of individual employees' hours or because the public expects government workers to be available during normal business operating hours. *See Hilbert v. District of Columbia*,

---

[4]  *See* Subsection 118(a); 19 Fed. Reg. 4405-06 (July 17, 1954); *see also Donovan v. Carls Drug Co., Inc.*, 703 F.2d 650, 652 (2d Cir. 1983) (finding under the Act that "a salaried professional employee may not be docked pay for fractions of a day of work missed").

23 F.3d 429, 435 (D.C. Cir. 1994). Under this arrangement, many state and local governments do not pay their salaried employees in a fashion consistent with the salary basis test. *See* 57 Fed. Reg. 37,677 (Aug. 19, 1992). In other words, whether a government employee's wages are docked is not a good indicator of whether the employee is a bona fide executive, administrative, or professional employee.

In response to this problem, the Department of Labor developed a regulation which allows government employers to dock employees' pay if the docking is pursuant to a system of public accountability:

> An employee of a public agency . . . shall not be disqualified from exemption . . . on the basis that such employee is paid according to a pay system established by statute, ordinance, or regulation, or by a policy or practice established pursuant to principles of public accountability, under which the employee accrues personal leave and sick leave and which requires the public agency employee's pay to be reduced or such employee to be placed on leave without pay for absences for personal reasons or because of illness for not less than one workday when accrued leave is not used by an employee because—
>
> > (1) permission for its use has not been sought or has been sought and denied;
> >
> > (2) accrued leave has been exhausted; or
> >
> > (3) the employee chooses to use leave without pay.

29 C.F.R. § 541.5d(a).

*See* Letter Ruling, Dept. of Labor, Wage and Hour Division (Jan 9, 1987); 56 Fed. Reg. 45,824-25 (Sept. 6, 1991); 57 Fed. Reg. 37,666 (Aug. 19, 1992). This regulation is commonly known as the "public accountability" ex-

ception to the no-docking rule contained within the salary basis test.

There is no precise definition of public accountability, and neither our previous cases[5] nor the text of the regulation attempt to create one.[6] However, under the regulation's plain language, a government employer can meet the requirements of the salary basis test, notwithstanding its docking policy, if the docking policy was "established pursuant to principles of public accountability." This suggests that providing proof of the government's purpose for creating or maintaining the pay system is relevant to determining whether the exception applies. But, at a minimum, the City must prove that its policy is consistent with the government's efforts to maintain a precise accounting of its employees' hours for reasons that extend beyond calculating an appropriate salary, such as avoiding ghost-payrolling problems.

Applying these principles to the facts of this case, we conclude, as the district court did, that the City's undisputed evidence that plaintiffs' compensation was consistent with public accountability principles qualifies it for

---

[5] We recently addressed this issue in *Mueller v. Reich*, 54 F.3d 438, 442 (7th Cir. 1995), *vacated on other grounds*, *Wisconsin v. Mueller*, 519 U.S. 1144 (1997), in which we acknowledged that the principle is "deeply rooted in the American political culture" and noted that citizens are "suspicious of their civil servants" and demand "public accountability for every minute, or at least every hour." But *Mueller* did not require us to directly address the scope of the exception.

[6] The Department of Labor defines it, in part, as "a broad concept that forms the foundation for many governmental administrative practices [whereby] elected officials and public agencies are held to a higher level of responsibility under the public trust that demands effective and efficient use of public funds in order to serve the public interest." 57 Fed. Reg. 37,666 (Aug. 19, 1992).

the exemption under 29 C.F.R. § 541.5d(a)(1). First, the City cites Indiana's "Ghost Employment Statute", claiming that the statute makes it publicly accountable for preventing non-working employees, who do not request or are denied leave time, from receiving compensation. Under that statute, "a person employed by a governmental entity who, knowing that he has not been assigned any duties to perform for the entity, accepts property from the entity commits ghost employment, a Class D felony." *See* Ind. Code § 35-44-2-4(c); *Fadell v. State*, 450 N.E.2d 109, 118 (Ind. Ct. App. 1983).

The City also claims that its Code of Ethics prevents it from paying employees for not working during a regularly scheduled workday, which is evidence of its public accountability. The City's Code of Ethics specifies that:

> No officer or employee shall use or permit the use of any individual, funds or property under his or her official control, direction or custody, or of any funds or property of an agency, for a purpose which is, or to a reasonable person would appear to be, for the private benefit of an officer or employee or any other person.

Indianapolis Municipal Code, § 293-105(b).

The City's final undisputed evidence of its public accountability also relates to work week scheduling. The City's employee manual explains that the "job performance and personal conduct of each employee impact directly on the public's trust," and details numerous rules designed to establish procedural safeguards for the on-time job performance of each public employee. In addition, the employee manual makes clear that the leave policies, flex-time, and workplace hours are to be set by department supervisors, who have final authority over such matters. In accordance with these guidelines, the City also points to Indiana Code § 36-3-6-3, which

requires that "salaried employees . . . work a regularly scheduled work week, in accordance with the schedule of compensation." We agree with the City that these explicit requirements regarding an employee's work week scheduling are further proof of its public accountability, because Indiana law requires that the working hours of each employee be fully accounted for.

Rather than directly addressing this evidence, plaintiffs argue that the City's overtime payments on an hourly basis to *other* salaried employees makes those employees, as well as plaintiffs, exempt under the Act and entitled to hourly overtime. While it is true that other salaried employees received discretionary payments that appear to be calculated solely based on hours worked in excess of forty hours per week, this practice is not necessarily inconsistent with the salary basis test if it is a part of a bonus or incentive scheme. *See* 29 C.F.R. § 541.118(b) ("[a]dditional compensation besides the salary is not inconsistent with the salary basis of payment," as long as it is part of a bonus or incentive scheme). We note that our sister courts are divided as to whether the payment of bonus monies in this manner meets or defeats an employer's proof of payment on a salary basis.[7] However, we need not decide that issue here, because the plaintiffs never received a discretionary payment. Therefore, they cannot use discretionary payments to others as a basis for their claims that such discretionary payments, if applied to them, would make them hourly employees.

---

[7] *Compare Abshire v. County of Kern*, 908 F.2d 483, 486-87 (9th Cir. 1990) *and Brock v. Claridge Hotel & Casino*, 846 F.2d 180, 184-85 (3d Cir. 1988) (both finding the practice inconsistent with payment on a salary basis) *with York v. City of Wichita Falls*, 944 F.2d 236, 242 (5th Cir. 1991) *and Hartman v. Arlington County*, 720 F. Supp. 1227, 1229 (E.D. Va. 1989), *aff'd*, 903 F.2d 290 (4th Cir. 1990) (finding hourly based overtime compatible with payment on a salary basis).

B.  Short Test—Prongs Two and Three: The Capacity and
Duties Tests

Although we have found that the City has met the salary basis test, it is also required to prove that: (1) plaintiffs were employed in professional, administrative, or executive capacities[8] and (2) plaintiffs either primarily managed more than two employees or performed management or operations work that required the exercise of discretion and independent judgment. *See* 29 C.F.R. §§ 541.119, 541.214, 541.315.

1.  Demos's capacity and duties were administrative.

The parties agree that the City's only possible overtime pay exemption for Demos arises under his capacity as an administrative employee. That requires the City to prove that Demos's primary duties were "either the performance of office or nonmanual work directly related to management policies or general business operations of the employer or the employers." 29 C.F.R. § 541.214(a). In addition, the City must show that his primary duties included work "requiring the exercise of discretion and independent judgment." *Id.*

Demos only challenges the district court's conclusion that he exercised discretion and independent judgment in his employment in the Department of Capital Asset Management from 1997 to 1998. In his deposition, Demos testified that he spent most of his time "putting out fires" for his supervisor and serving as "the buffer between what [his supervisor] wanted done with what the users of the other Parks Department(s) wanted done out in the field." In addition, he recommended modifications to the

---

[8]  Neither party claims that the plaintiffs were employed in a "professional" capacity.

department's asset plan, which included negotiating with managers to figure out how funding could be reduced for some projects in order to provide sufficient funding for other projects. He also performed disability compliance work and served as a representative to the public, the park board, and outside contractors. Demos's supervisor relied heavily upon Demos's advice regarding various park projects and facilities matters.

Notwithstanding his deposition testimony, Demos submitted an affidavit claiming that he spent forty-five percent of his time filing various documents and twenty percent of his time in project management activities. Calculating that more than fifty percent of his time was spent on duties that did not call for the exercise of discretion and judgment, he argues that the district court erred in finding him an exempt administrative employee. We reject this rigid approach. Although the Secretary's regulations suggest that the primary duty of an employee is that work that constitutes more than fifty percent of his or her time, the Secretary's guidelines caution that time is not the only test. *See* 29 C.F.R. § 541.103.

Although the totality of plaintiff's duties are relevant, we may also consider the relative importance of those duties to the employer, the frequency that the employee exercises discretion, and the employee's autonomy and authority in his or her organization. *Id.* The employee's primary duty "is that which is of principal importance to the employer, rather than collateral tasks which may take up more than fifty percent of his or her time." *Reich v. Wyoming*, 993 F.2d 739 at 742 (10th Cir. 1993) (considering and rejecting plaintiff's majority-time approach to identifying an employee's primary duties).

Considering his deposition testimony and the other evidence in the light most favorable to Demos, we find that virtually all of Demos's duties were administrative.

*See* 29 C.F.R. §§ 541.2(e)(2), 541.214(a). At a minimum, "putting out fires" for his supervisor meets the discretionary component of § 541.214(a), and recommending the proper allocation of finances and working with outside groups meets the "independent judgment" component as well.[9] The only way that we could conclude that Demos's activities were primarily non-administrative would be to ignore his deposition testimony and the other undisputed evidence. However, as we made clear in *Piscione v. Ernst & Young, LLP*, 171 F.3d 527 (7th Cir. 1999), it is Demos's deposition testimony that controls—not his belated and self-serving affidavit. Lacking any other basis for his non-exemption under the short test, no reasonable juror could conclude that Demos was at any time anything but an exempt administrative employee.

### 2.  Graham's capacity and duties were executive.

The parties agree that the City's only possible overtime exemption for Graham arises under his capacity as an executive employee. That capacity requires the City to prove that Graham's primary duties were "management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof." 29 C.F.R. §§ 541.119(a), 541.1(f). In addition, the City must prove that Graham's primary duties included "the customary and regular direction of the work of two or more other employees therein." *Id.*

---

[9]  29 C.F.R. § 541.207(a) notes, in part, that "discretion and independent judgment [involve] the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered. . . ." Likewise, Demos's recommendations for action included financial decisions and other commitments that are explicitly identified in 29 C.F.R. § 541.207(d)(2).

The undisputed evidence shows that Graham was an executive employee. Graham's position was, on its face, one of executive responsibility. In fact, as Facilities Maintenance Supervisor, most of his work was spent managing other employees. For these reasons, Graham concedes that at least forty percent of his time, he was engaged in exempt executive management duties and managing more than two employees. However, he argues that the remainder of his executive time was spent in record keeping, making him a non-exempt employee. We disagree.

The Act's implementing regulations, *see* 29 C.F.R. § 541.103(b), speak directly to Graham's claim, because they specify that "the keeping by a supervisor of production or sales records of his own subordinates for use in supervision or control [is] exempt work."[10] Therefore, Graham's challenge fails for two reasons: his primary duties were all clearly executive and the large majority of his time was spent performing those duties. Both of these factors qualify him as an exempt employee under three separate sections of the regulations. *See* 29 C.F.R. §§ 541.119(a), 541.1(f), 541.103. Lacking any other basis for his non-exemption under the short test, no reasonable juror could conclude that Graham was at any time anything but an exempt executive employee.

In sum, we conclude that there are no material issues of fact regarding the plaintiffs' status as salaried administrative or executive employees exempt from the FLSA.

---

[10] As with Demos, a minor dispute about the increasing burden of clerical work shouldered by Graham led, in part, to his decision to file this action. Although Graham certainly demonstrates that he was burdened by the lack of support staff, shouldering part of this burden does not, by itself, render him a non-exempt employee. *See also* 29 C.F.R. §§ 541.108(a) and (b) (considering this form of work to be directly related to management and supervision of employees).

C. The City's Motion to Reconsider

Finally, the plaintiffs object to the decision of the district court to grant summary judgment to the City on its "motion to reconsider."[11] They claim that this decision was unfair for two reasons: (1) they object to the district court's taking judicial notice of previously unmentioned Indiana statutes and (2) they object to the City's providing substantive arguments on its public accountability exception at such a late date. As to both issues, we review for abuse of discretion. *See, e.g.*, *Waid v. Merrill Area Pub. Sch.*, 130 F.3d 1268, 1272 (7th Cir. 1997).

The judicial notice issue is settled, because a district court can always rely on public statutes. *See* Fed. R. Evid. 201; *see also Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977) ("matters of public record such as state statutes, city charters, and city ordinances fall within the category of 'common knowledge' and are therefore proper subjects for judicial notice").

Plaintiffs also claim that the district court should have denied the motion because the City's arguments were untimely. The district court was well within its discretion to admonish the City for its tardiness, which it did at length. *See Demos*, 139 F. Supp. 2d at 1027-28. The district court was also not required to accept the City's late arguments, but was within its discretion in doing so. A review of the record shows that the City mentioned the public accountability exception in its proposed jury instructions, its case management plan, and briefly in its motion for summary judgment. It is hard to see how

---

[11] As we mentioned in *Talano v. Northwestern Medical Faculty Foundation*, 273 F.3d 757, 760 n.1 (7th Cir. 2001), a "motion to reconsider" does not exist under the Federal Rules of Civil Procedure. The City's motion pursuant to Rule 59(e) is properly termed a motion to alter or amend the judgment. *See also*, *United States v. Deutsch*, 981 F.2d 299 (7th Cir. 1992).

the plaintiffs were prejudiced here, because they certainly had an indication that the City's public accountability was at issue in this case.[12] After acknowledging on the record that the City had not fully developed the law appropriate to this case, the district court promptly and honestly corrected the mistake in accordance with Rule 59. *See, e.g.*, *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995).

## III.  CONCLUSION

There are no material issues of fact with respect to the City's entitlement to the public accountability exception to the salary basis test's no-docking rule or with respect to the classification and duties of the plaintiffs. Therefore, we AFFIRM the district court.

A true Copy:

      Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*

---

[12] The record shows that the parties must have raised the public accountability exception prior to summary judgment, as evidenced by the district court's initial rejection of that argument in its first opinion. In a case like this, where a party opposes a summary judgment motion on multiple grounds, the opposing party must "wheel out all its artillery to defeat it." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). To that end, we note that when the plaintiffs finally were squarely presented with the City's evidence of its public accountability, they did not contest its substance.

---