Terry J. KENNEDY, et. al., Plaintiffs,

v.

COMMONWEALTH EDISON
COMPANY, a/k/a ComEd,
Defendant.

No. 00–4053.

United States District Court,
C.D. Illinois.

Jan. 31, 2003.

Dorothy A. O'Brien, Marlita A. Greve, Brad A. Reynolds, O'Brien & Greve PLC, Davenport, IA, for Plaintiff.

Max Fischer, Sidley Austin Brown & Wood, Chicago, IL, Glenn D. Newman, Susan H. Rider, Douglas A. Graham, Exelon Business Services Co., Chicago, IL, for Defendant.

## *ORDER*

McDADE, Chief Judge.

Before the Court are Plaintiffs' and Defendant's cross-motions for summary judgment [Docs. # 46 & 119]. The issue at hand is whether Plaintiffs are exempt from overtime pay under the Fair Labor Standards Act ("FLSA") and Illinois Minimum Wage Law ("IMWL").

Defendant asserts that Plaintiffs are exempt from FLSA's overtime requirement under the "administrative" employee exemption. The Secretary has defined a long test, *see* 29 C.F.R. §§ 541.2(a)-(e) and a short test, *see* 29 C.F.R. § 541.214. Plaintiffs and Defendant agree that the short test is applicable. The four requirements for "administrative" employees are: (1) job responsibilities entail work requiring the exercise of discretion and independent judgment; (2) earn a minimum of $250 per week; (3) are paid on a salary basis; and (4) perform office or non-manual duties directly related to management policies or general business operations. The parties concede that Plaintiffs earn more than the minimum of $250 per week, and, on December 12, 2001, the Court issued an Order granting Defendant's Motion for Summary Judgment regarding whether Plaintiffs exercised "independent judgment and discretion." Therefore, the only two issues remaining—and the subject matter of the cross-motions for summary judgment—are whether Plaintiffs are paid on a salary basis and whether their work is directly related to Defendant's management policies or general business operations.

The employees at issue earn between $61,000 and $101,000 per year. The five broad employment categories they are employed in are: Work Planners, Lead Work Planners, First Line Supervisors, Staff Specialists, and a Supply Analyst. Defendant's compensation structure, payroll and work schedules, and what duties encompass Plaintiffs' jobs are the facts that are central to this Order and will be discussed *supra* in their respective sections.

The Court held oral arguments on the aforementioned remaining issues on November 4, 2002. This Order follows.

## *SUMMARY JUDGMENT*

### A. Legal Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The moving party bears the initial burden of identifying the portions of the record that it believes demonstrate the absence of a genuine issue of material fact and entitle it to judgment as

a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Cain v. Lane,* 857 F.2d 1139, 1142 (7th Cir.1988). All evidence submitted must be viewed in the light most favorable to the non-moving party. *See Adickes v. S.H. Kress and Co.* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Holland v. Jefferson Nat. Life Ins. Co.,* 883 F.2d 1307, 1312 (7th Cir.1989).

Once the moving party has properly supported its motion for summary judgment, the nonmoving party must set forth specific facts showing there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *See Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548.

Summary judgment will be denied where a reasonable jury could return a verdict for the non-moving party. *See Liberty Lobby, Inc.* 477 U.S. at 248, 106 S.Ct. 2505; *Hedberg v. Indiana Bell Telephone Co.,* 47 F.3d 928, 931 (7th Cir.1995). Credibility determinations, weighing evidence, and drawing reasonable inferences are fact finder functions, not those of a judge when deciding a motion for summary judgment. *See Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. 2505. However, mere conclusory assertions, unsupported by specific facts, are not sufficient to defeat a proper motion for summary judgment. *See Bragg v. Navistar Int'l Transp. Corp.,* 164 F.3d 373, 377 (7th Cir.1998); *Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir.1993) ("Self-serving affidavits without factual support in the record will not defeat a motion for summary judgment."); *Karazanos v. Navistar,* 948 F.2d 332, 337 (7th Cir.1991) ("A party to a law suit cannot ward off summary judgment with an affidavit ... based on rumor or conjecture."). Only disputes over facts "that might affect the outcome of the suit ... will properly preclude the entry of summary judgment." *Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. 2505.

## ANALYSIS

The Court's December 2001 Order is instructive on the legal framework presented by this issue and is therefore recited as necessary:

The FLSA determines requirements and coverage for a variety of employment standards, e.g., minimum wages, equal pay, child labor, and, overtime pay which is the issue in this case. 29 U.S.C. § 201 et seq. (1998). Under the FLSA, employers must pay their employees at least one and a half times their regular wage for the number of hours worked that exceed forty in a given week. *See* 29 U.S.C. § 207(a)(1). Employees, however, "employed in a bona fide executive, administrative, or professional capacity" are exempted from this requirement. 29 U.S.C. § 213(a)(1). Defendant argues that Plaintiffs fall within the exemption as administrative employees.

Congress chose not to define what constitutes an administrative employee, but, instead, delegated to the Secretary of Labor the authority to define the scope of this term. *See* 29 U.S.C. § 213(a)(1). Therefore, the Secretary's regulations have "the force and effect of law." *Piscione v. Ernst & Young, L.L.P.,* 171 F.3d 527, 533 (7th Cir.1999) (citing *Batterton v. Francis,* 432 U.S. 416, 425 n. 9, 97 S.Ct. 2399, 53 L.Ed.2d

448 (1977)). While the Court is not bound by these interpretative regulations, as the Seventh Circuit noted in *Piscione*, "we may rely upon them to the extent they add in our assessment of a case." 171 F.3d at 533.

There is a well-established process for determining whether an employee is a bona fide administrative employee. *See Demos v. City of Indianapolis*, 126 F.Supp.2d 548, 552 (S.D.Ind.2000). The Secretary has defined a long test, *see* 29 C.F.R. §§ 541.2(a)-(e) and a short test, *see* 29 C.F.R. § 541.214. Plaintiffs and Defendant agree that the short test is applicable.

The employer bears the burden of establishing whether an employee fits within the administrative exemption under the short test. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974).

In presenting their arguments, Plaintiffs and Defendant have detailed compensation and work structures as being indicative of their respective arguments. It is not the issues of fact in these categories that are in dispute here, but their legal significance. The Court, therefore, shall proceed via these categories in making its determination.

### A. Plaintiffs as "Hourly" Employees

Plaintiffs contend that prior to January 1, 2000, Defendant treated Plaintiffs as hourly employees by paying them time and one-half their respective hourly rates for hours worked in excess of 40 hours per week. Starting on January 1, 2000, however, Defendant modified its' payroll policy to eliminate this provision citing a necessity that the new payroll policy be a reflection of change in the newly deregulated electric marketplace. Regardless of this change, Plaintiffs contend that Defendant still paid compensation for work done beyond a standard 40 hour week and that this is indicative of their status as hourly employees. As further proof of their hourly status, Plaintiffs point to pay stubs, which reflect an hourly rate. Plaintiffs also point to the Defendant's requirement that First Line Supervisors are required to arrive and leave work at predetermined times, expected to work five days a week, work eight hours a day, and that they are prohibited from accruing comp time.

### 1. Hourly Status Reflected in Paperwork

■ The Court finds Plaintiffs' argument that their hourly status is reflected in pay stubs and certain restrictions placed on First Line Supervisors to be baseless. With respect to Plaintiffs' pay stubs, it has been widely accepted that an employee may be salaried even though time records indicate the number of hours worked and a hourly rate of pay. See *McGuire v. City of Portland*, 159 F.3d 460, 464 (9th Cir. 1998) (finding even where payroll accounts "on a hour-by-hour basis, recording sick leave and other absences, as well as additional hours worked beyond the standard shift" that employee was salaried); *B.N. Spradling v. City of Tulsa, Okl.*, 95 F.3d 1492, 1500 (10th Cir.1996) (the Tenth Circuit held that "the ... [ ]employees' paystubs indicated the number of hours covered is also not inconsistent with salaried status.").

### 2. Time and Place Restrictions

■ As for the time and place restrictions placed on First Line Supervisors, the Court finds these as equally unpersuasive factors in arguing that Plaintiffs are not salary employees. The only support Plaintiffs provide in support of their argument is the Second Circuit's decision in *Martin v. Malcolm Pirnie*, 949 F.2d 611 (2nd Cir. 1991). In *Martin*, the Second Circuit overturned the district court's decision holding that the defendant was entitled to invoke the "window of correction" with

regard to correcting impermissible employee deductions. The Second Circuit based this decision on evidence regarding the employer's docking policies that applied to all employees regardless of their grade classification. *See id.* at 616. In dicta, however, the Second Circuit noted "that a company's general requirement that its employees work at least eight hours in a day strongly suggests that the company views these employees as hourly and not salaried." *Id.* at 617. This one sentence is the only support for Plaintiffs contention that mandatory time and place restrictions placed on First Line Supervisors is impermissible under the FLSA.

More on point, however, the Seventh Circuit has found scheduled work shifts permissible. In *Haywood v. North American Van Lines, Inc.,* the Seventh Circuit found no basis in the Secretary's regulations for the plaintiff's contention that non-monetary discipline for failing to work a scheduled shift supported a finding for non-salaried status. 121 F.3d 1066, 1070 (7th Cir.1997). In making this determination, the Seventh Circuit stated that "[n]othing in the regulations suggests that an employee loses his exempt status simply because his employer disciplines him in a nonmonetary fashion for failing to work during a scheduled time." *Id.* This precedent is controlling on the Court's decision and there is no reason why it should not be applied to this matter. Therefore, with respect to Plaintiffs being treated as hourly employees because of Defendant's time and place restrictions, the Court finds that these restrictions do not support a finding of non-salaried status.

### 3. Additional Payments Made by Defendant to Plaintiffs

■ Plaintiffs' have one contention that is disturbing to the Court, which is the additional compensation paid by Defendant to Plaintiffs for additional hours worked beyond the traditional 40 hour work week

model. On its face, this practice seems to be inconsistent with the regulations and policies. However, under Department of Labor regulations, "additional compensation besides the salary is not inconsistent with the salary basis of payment." 29 C.F.R. § 541.118(b). The permissibility of this action runs in conjunction with the fear that an employer may design a payment scheme where "the employee's predetermined base pay is so far below his total compensation as to make the base pay's status merely an illusion." *Wright v. Aargo Security Services, Inc.,* 2001 WL 91705, at *5 (S.D.N.Y. Feb.2, 2001). This concern is weighted against the potential beneficial effects of additional payments as incentive for increasing worker effectiveness and productivity. In addressing this issue, the Department of Labor regulations provide three examples of permissible additional compensation: (1) compensation based on sales; (2) compensation as a bonus based on profits; and (3) "an employee paid on a daily or shift basis, if the employment arrangement includes a provision that the employee will receive not less than the amount specified in the regulations...." 29 C.F.R. § 541.118(b). At oral arguments, it quickly became apparent that the parties are in disagreement whether this list is exclusive as to other forms of payment. While Plaintiffs crouched their argument in terms that would have the Court believe that additional payment structures or compensation not listed in the aforementioned regulation would be prohibited, the language of the regulation clearly shows this is not the case. Therefore, while the regulation's three examples of permissible structures provide guidance to the Court, they do not limit the Court's review and analysis.

Plaintiffs argue that the additional payments made by Defendant are not bonuses to increase productivity, but merely payments to increase the number of hours

worked by Plaintiffs. In support, Plaintiffs present evidence of Defendant's practice of computing salary, which shows an additional payment calculation determined by multiplying additional hours worked times their respective regular rates of pay. Plaintiffs allege that if these additional payments are "incentive at all, it does not encourage the management employee to make better use of his time but only to work more hours. This 'encouragement' is inconsistent with salary payments." (citing *Brock v. Claridge Hotel and Casino*, 846 F.2d 180, 185 (9th Cir.1998)). During oral arguments, Plaintiffs also reiterated the existence of "a bonus plan [already in place,] that is tied to a percentage of their annual salaries and not tied to the number of hours ... [Plaintiffs] work." Oct. 4, 2002, Argument P. 12.

Other district courts in the Seventh Circuit, however, have found that overtime payments are not inconsistent with exempt status under the FLSA. In *Demos v. City of Indianapolis*, Chief Judge Barker found that compensation for work done beyond the standard week permissible as "[s]uch payments are generally permitted by the regulations setting forth the test for determining if an employee is paid on a salary basis." 126 F.Supp.2d 548, 556 (S.D.Ind. 2000), *aff'd*, 302 F.3d 698 (7th Cir.2002). In making this determination, the district court relied on another district court case, *Pautlitz v. City of Naperville*, 781 F.Supp. 1368 (N.D.Ill.1992). Both cases relied on the premise that a pay system with additional compensation based on overtime hours worked was permissible as a salary basis because it compensates employees "for 'their commitment to their duties beyond the standard week.'" *Demos*, 126 F.Supp.2d at 556 (citing *Pautlitz*, 781 F.Supp. at 1371). However, the reach of these two cases is limited. Both cases involved government employers whose pay systems, traditionally have incorporated features associated with hourly employees

due to the FLSA recognized applicability to public employees of the principle of public accountability—that governmental employees should not be paid for time not worked, and that there is need to be accountable to the taxpayer for the expenditure of public funds. *See Demos*, 302 F.3d at 702–03; *Pautlitz*, 781 F.Supp. at 1370–71.

Several circuit courts have concurred with this determination. See *Michigan Ass'n of Governmental Employees v. Michigan Dep't of Corrections*, 992 F.2d 82, 84 n. 3 (6th Cir.1993)("Although receiving [overtime] compensation ... may seem inconsistent with general notions of salaried status, ... it does not jeopardize salaried status as defined by the regulations.")(internal citations omitted); *York v. City of Wichita Falls*, 944 F.2d 236, 242 (5th Cir.1991)("Paying an hourly rate beyond the regular schedule does not defeat the executive exemption."). The Third and Ninth Circuits, however, have stated that overtime pay is generally inconsistent with a salaried status. See *Brock v. Claridge Hotel & Casino*, 846 F.2d 180, 185–85 (3d Cir.1988), *cert. denied*, 488 U.S. 925, 109 S.Ct. 307, 102 L.Ed.2d 326 (1988); *Abshire v. County of Kern*, 908 F.2d 483, 486 (9th Cir.1990), *cert. denied*, 498 U.S. 1068, 111 S.Ct. 785, 112 L.Ed.2d 848 (1991).

While the Seventh Circuit has not directly ruled on this issue, it visited it in *Klein v. Rush–Presbyterian–St. Luke's Medical Ctr.* 990 F.2d 279 (7th Cir.1993). In *Klein*, the plaintiff was a nurse paid "biweekly for an expected eighty-hour pay period consisting of ten shifts ... [and] received a set amount based upon eighty hours of work." *Id.* at 281. Her employer also had a comp or flex time policy that allowed employees to accrue positive or negative comp time. Positive comp time was for hours worked beyond what was

required for a shift and an employee could choose to be paid for those hours or "bank" them for additional time off. *See id.* Negative comp time is for when "[a] nurse ... works less than eight hours on a shift [and] must use accrued positive comp time or else go into negative comp time to maintain an eighty-hour total for each pay period." *Id.*

In holding that the plaintiff in *Klein* was not paid on a salary basis, the Seventh Circuit noted the split within the circuits and then went on to hold that overtime payments are not always inconsistent with a salary basis. *See id.* at 284. However, the Seventh Circuit relied heavily upon the negative comp time factor in holding otherwise in the plaintiff's case, as shown by the Seventh Circuit's language: "We do not have to hold that overtime is always inconsistent with a salary because the negative comp time policy, along with the overtime provision, help show that ... [the plaintiff] was not paid on a salary basis." *Id.; see also, Demos v. City of Indianapolis,* 302 F.3d 698 (7th Cir.2002) ("We note that our sister courts are divided as to whether the payment of bonus monies in this manner meets or defeats an employer's proof of payment on a salary basis. However, we need not decide that issue here, because the plaintiffs never received a discretionary payment.") *Id.* at 703–04. While the parties concede that the Seventh Circuit has not directly ruled on the issue, Plaintiffs read the aforementioned language as a requirement that this Court ignore its sister courts' holdings in *Demos v. City of Indianapolis,* 126 F.Supp.2d 548 (S.D.Ind.2000), *Johnson v. Chicago Housing Auth., available at* 1997 WL 757737, *5, 1997 LEXIS 19001, at *14 (N.D.Ill. Nov. 24, 1997), and *Pautlitz v. City of Naperville,* 781 F.Supp. 1368 (N.D.Ill. 1992), and invite the Court to hold that Defendant's "overtime policy, in conjuncture with other factors, may be relied upon

by Plaintiffs to demonstrate they are not salaried employees as a matter of law."

Finding the issue unaddressed by the Seventh Circuit, the Court accepts the invitation based upon the Court's judgment that the Seventh Circuit Court of Appeals will limit the holdings in *Demos* and *Pautlitz* to governmental employees. That leaves *Klein* as the only pertinent Seventh Circuit decision. In Klein, the Appellate Court specifically cited the *Pautlitz* decision as one upholding overtime compensation for salaried employees. The Seventh Circuit went on to hold that overtime pay is not always inconsistent with a salary basis and limited its holding to situations where there is overtime compensation and other factors affecting a plaintiff's salary. *See* 990 F.2d at 284. The negative comp time policy was the "other factor" in Klein. Therefore, the Seventh Circuit's holding in *Klein* is applicable to the present matter to the extent that there are other factors indicating non-salaried basis.

The existence of a formal bonus program by Defendant is the "other factor" that persuades the Court in this case that the additional compensation for hours worked beyond the expected 40 hours work week is inconsistent with a salary basis. The regulations make clear that "extras" defeat salaried status when their existence is attributable to circumventing the regulatory requirements. *See* 29 C.F.R. § 541.118(b). There is a critical difference between a "bonus" and "payment for additional hours worked." A bonus structure is permissible under the regulations, as well it should be, since an employer should have the ability to reward an employee for exceeding expectations or completion of an especially difficult task or project. Straight payment for additional hours worked—regardless of the task or project performed—runs counter to the ideals served in a bonus scheme. These payments are simply measured by the ad-

ditional time an employee spends working and indicates that this is the employer's best method for tracking the productivity of an employee, which is the traditional method for surveying hourly employees. The Court finds further support for this decision in the existence of Defendant's Snow Day policy.

■ Defendant's Snow Day policy allows that during periods of inclement weather, employees may report to work, use vacation time without prior approval, or take time off without pay. The salary-basis test denies exempt status "when employees are covered by a policy that permits disciplinary or other deductions in pay as a practical matter." *Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (internal citations omitted). Defendant asserts that the Snow Day policy is consistent with the regulations recognizing that an employer can dock an employee's pay if the employee fails to report to work for a "personal reason." 29 C.F.R. § 541.118(a)(2).

While Defendant contends that this policy is designed to allow an employee flexibility in potentially hazardous conditions without the concern of possible disciplinary repercussions, the Court finds that this policy is not analogous to the section of the regulations permitting deductions for a "personal reason." Section 541.118(a)(2) specifically excludes from its reach an employee's absence due to sickness or accident. The reasoning behind this is that these occurrences are of an involuntary nature and something that is essentially out of the employee's control. An employee's absence due to extreme weather conditions is usually due to that employee's inability to travel to work because weather conditions have made travel impossible—a condition that is also essentially out of the employee's control. Therefore, the threat of a pay deduction because of an uncontrollable absence further demonstrates that Plaintiffs were not salaried employees as a matter of law.

**B. State Claims**

■ The success of Plaintiffs' state law claims under the IMWL rides on the success of Plaintiffs' FLSA claim. Therefore, the Court also grants Plaintiffs' motion with respect to their state claims. *See* 820 ILCS 105/4a(2)(E) (adopting the FLSA definitions of bona fide executive, administrative, and professional employees for use in claims under the Illinois Minimum Wage Law); *see also Orphanos v. Charles Industries, Ltd.,* No. 95–C–4039, 1996 WL 437380, at *4 (N.D.Ill. July 29, 1996).

### *CONCLUSION*

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Summary Judgment [Doc. # 46] is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment [Doc. # 119] is DENIED.

This matter is scheduled for a telephone status conference on February 21, 2003, at 2:45pm, in which the Court will discuss the briefing schedule for damages and any other relevant matters. The Court will initiate the call.